**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL STROUBE, | Civil Action No. |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| THE NEW HOME COMPANY, INC., H. LAWRENCE WEBB, WAYNE J. STELMAR, DOUGLAS C. NEFF, MICHAEL J. BERCHTOLD, SAM BAKHSHANDEHPOUR, GREGORY P. LINDSTROM, CATHEY S. LOWE, AND PAUL C. HEESCHEN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Paul Stroube ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by The New Home Company, Inc. ("New Home" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning New Home and the Defendants.

## SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against New Home and the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the proposed acquisition of the Company by funds managed by affiliates of Apollo Global Management, Inc. ("Apollo") (the "Proposed Transaction").

2.     On July 23, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Apollo.  Pursuant to the terms of the Merger Agreement the Company's shareholders will have the right to receive $9.00 in cash for each share they own (the "Merger Consideration").

3.     On August 10, 2021, in order to convince the Company's shareholders to tender their shares in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Solicitation/Recommendation Statement with the SEC (the "Recommendation Statement").

4.     Accordingly, the failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as New Home stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction.

5.     As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act.

7.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

9.      Plaintiff is, and has been at all times relevant hereto, the owner of New Home shares.

10.      Defendant New Home is incorporated under the laws of Delaware and has its principal executive offices located at 6730 N. Scottsdale Rd., Suite 290, Scottsdale, Arizona 85253.  The Company's common stock trades on the New York Stock Exchange under the symbol "NWHM."

11.      Defendant H. Lawrence Webb ("Webb") is and has been Executive Chairman of the Board of New Home at all times during the relevant time period.

12.      Defendant Wayne J. Stelmar ("Stelmar") is and has been a New Home director at all times during the relevant time period.

13.     Defendant Douglas C. Neff ("Neff") is and has been a New Home director at all times during the relevant time period.

14.     Defendant Michael J. Berchtold ("Berchtold") is and has been a New Home director at all times during the relevant time period.

15.     Defendant Sam Bakhshandehpour ("Bakhshandehpour") is and has been a New Home director at all times during the relevant time period.

16.     Defendant Gregory P. Lindstrom ("Lindstrom") is and has been a New Home director at all times during the relevant time period.

17.     Defendant Cathey S. Lowe ("Lowe") is and has been a New Home director at all times during the relevant time period.

18.     Defendant Paul C. Heeschen ("Heeschen") is and has been a New Home director at all times during the relevant time period.

19.     Defendants Webb, Stelmar, Neff, Berchtold, Bakhshandehpour, Lindstrom, Lowed, and Heeschen are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants, along with Defendant New Home, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.     New Home designs, constructs, and sells single-family detached and attached homes. The company operates through three segments: Arizona Homebuilding, California Homebuilding, and Fee Building. It builds and sells homes in metropolitan areas of California and Arizona, including Southern California, the San Francisco Bay area, metro Sacramento, and the greater Phoenix area; and Denver, Colorado. The company also offers general contracting,

construction management and coordination, and escrow coordination services, as well as sales and marketing services to build homes for third-party property owners.

## The Company Announces the Proposed Transaction

22.     On July 23, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> SCOTTSDALE, Ariz. & NEW YORK--(BUSINESS WIRE)--The New Home Company (NYSE: NWHM) ("NWHM" or "the Company") and funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, Inc. (NYSE: APO) (together with its consolidated subsidiaries "Apollo") today announced that they have entered into a definitive merger agreement pursuant to which the Apollo Funds have agreed to acquire the Company in an all-cash transaction for $9.00 per share. The transaction values NWHM at an enterprise value of approximately $338 million.
>
> Under the terms of the agreement, which has been unanimously approved by the NWHM Board of Directors, the Apollo Funds will commence a tender offer to acquire all outstanding shares of NWHM for $9.00 per share in cash. The purchase price represents an 85% premium to the closing stock price on July 22, 2021 of $4.86 per share and a 51% premium to the 90-day volume-weighted average price. The holders of approximately 30% of NWHM's shares of common stock have agreed to tender their shares to the Apollo Funds pursuant to the tender offer in accordance with the terms of a support agreement.
>
> Founded in 2009, the New Home Company is a new generation homebuilder focused on the design, construction, and sale of innovative and consumer-driven homes in key markets across California, Arizona and Colorado. The Company's range of product offerings from entry level up through luxury homes and communities have generated significant organic growth. As homebuilders continue to consolidate amid favorable supply and demand dynamics in the U.S. housing market, this transaction is designed to give the Company greater operational and financial flexibility to scale its platform while maximizing value for shareholders.
>
> "Over the last several years, we have transformed the company into a growing and diversified builder with operations in three states," said H. Lawrence Webb, Executive Chairman of The New Home Company Board of Directors. "We have strengthened our balance sheet, streamlined our cost structure and repositioned our product offerings to cater to a deeper pool of buyers. Apollo's ability to provide flexible capital and deep knowledge of the homebuilding industry will help us to accelerate the growth of our business. Following a thorough review of

the opportunities available to the Company, The New Home Company Board of Directors unanimously determined that entering into this agreement is the best path forward to maximize value for shareholders."

"As consumer demand for new homes accelerates amid limited supply, we continue to see exciting opportunities to invest in the residential housing market," said Peter Sinensky, Partner at Apollo. "New Home's consumer-driven approach and dedicated focus on integrating unique design and architecture has separated the Company as a best-in-class homebuilder. We are excited to work with the management team to execute on the Company's growth strategy and provide more homes to consumers across the country."

"I am extremely proud of our team and the progress we've made over the last few years in transforming the company into a more profitable, better positioned homebuilder," said Leonard Miller, President & Chief Executive Officer of New Home. "We are excited to enter into this new chapter together with Apollo, who shares our strategic vision for New Home as a platform for delivering quality homes and communities with award-winning design and unparalleled customer experience. By joining forces with Apollo, we will have the financial flexibility to build on our recent successes and take the company to new heights."

The closing of the transaction is subject to customary closing conditions and the tender of shares representing at least a majority of the Company's outstanding common stock to the purchaser, an entity wholly owned by the Apollo Funds, and is expected to close in the second half of the Company's fiscal year. Following the successful completion of the tender offer, the Apollo Funds will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price. The transaction will be financed with equity provided by the Apollo Funds and, if required, a committed debt financing package. Other than commitments in respect of a revolving credit facility, no incremental debt is expected to be raised in connection with the transaction.

Upon the completion of the transaction, NWHM will become a privately held company and shares of NWHM common stock will no longer be listed on any public market.

Citigroup Global Markets Inc. is acting as exclusive financial advisor to NWHM and Latham & Watkins LLP is acting as legal advisor to NWHM. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor and J.P. Morgan Securities LLC is acting as financial advisor to the Apollo Funds.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE RECOMMENDATION STATEMENT

23.     On August 10, 2021, the Company authorized the filing of the Recommendation Statement with the SEC.  The Recommendation Statement recommends that the Company's shareholders tender their shares in favor of the Proposed Transaction.

24.     Defendants were obligated to carefully review the Recommendation Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Recommendation Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to tender their shares in favor of the Proposed Transaction.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

25.     The Recommendation Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27.     In order to make management's projections included in the Recommendation Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) gross profit; (ii) net income; (iii) EBIT; and (iv) unlevered free cash flow.

29.     In addition, regarding Citigroup Global Markets Inc.'s ("Citigroup") *Discounted Cash Flow Analysis*, Citigroup utilized the Company's estimated tax savings from deferred tax assets, the Company's estimated real estate inventory and treated stock-based compensation as a cash expense. The Recommendation Statement, however, fails to disclose the Company's estimated tax savings from deferred tax assets, the Company's estimated real estate inventory and stock-based compensation over the projection period.

30.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Opinions**

31.     The Recommendation Statement contains the financial analyses and opinion of Citigroup concerning the Proposed Transaction, but fails to provide material information concerning such.

32.     With respect to Citigroup's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the estimated tax savings from deferred tax assets during the period from July 1, 2021 through December 31, 2025; (ii) stock based compensation during the period from July 1, 2021 through December 31, 2025 that was treated as a cash expense; (iii) how it determined terminal value to inventory multiples of 0.80x to 0.90x as of December 31, 2025; (iv) the basis underlying the discount rate range used in the analysis; (v) the Company's net debt; (vi) the value of deferred purchase price with respect to the acquisition of the Epic Companies as of June 30, 2021; (vii) the value of unconsolidated investments; (viii) the basis and amounts added to or subtracted from the implied firm value reference ranges for the Company; and (ix) the number of fully-diluted outstanding shares of Company stock.

33.     With respect to Citigroup's *Present Value of Future Share Price* Analysis, the Recommendation Statement fails to disclose how Citigroup determined to use a range of theoretical future values per Share as of December 31 of each of 2021 through 2025 by applying illustrative price to book value multiples of 0.5x to 0.8x, selected by Citigroup.  Moreover, Citigroup failed to disclose how it determined to use an illustrative discount rate of 17.75%.

34.     With respect to Citigroup's *Selected Public Companies Analysis*, the Recommendation Statement fails to disclose why the information for Hovnanian Enterprises, Inc. is inapplicable or not meaningful for the analysis such as Price/2022E EPS and Price/Book Value.

35.     With respect to Citigroup's *Implied Premia Paid Analysis* the Recommendation Statement fails to disclose the 98 selected transactions occurring since 2017 that Citigroup deemed appropriate in its professional judgment with North American target companies, a transaction size between $50 million to $1 billion and an all-cash consideration.

36.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Background of the Transaction

37.     The Recommendation Statement fails to disclose material information concerning the background of the Proposed Transaction.

38.     Specifically, the Recommendation Statement fails to disclose the terms and value of the Company D Proposal compared to the June 11 Proposal.

39.     The Recommendation Statement fails to disclose whether there was a don't ask don't waive provision in the confidentially agreement executed with Management IX or amongst other potential acquirers of the Company.

40.     The Recommendation Statement fails to disclose whether there were any discussions regarding the future employment of officers and/or directors at or prior to execution of the Merger Agreement.

41.     The failure to disclose this material information renders the statements in the "Background of the Offer" section of the Recommendation Statement false and/or misleading in violation of the Exchange Act.

42.     Without the above described information, the Company's shareholders are unable to make a fully informed decision as to whether to tender their shares in favor of the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(d) of the Exchange Act and Rule 14d-9 Promulgated Thereunder)

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder makes it a requirement to make full and complete disclosure in connection with tender offers.

45.     As discussed herein, the Recommendation Statement, while soliciting shareholder support for the Proposed Transaction, misrepresent and/or omit material facts concerning the Proposed Transaction.

46.     Defendants prepared, reviewed, filed and disseminated the false and misleading Recommendation Statement to New Home shareholders. In doing so, Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in

deciding whether to tender their shares in favor of the Proposed Transaction. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

48.     By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Proposed Transaction negotiation and sales process and reviewing New Home's financial advisor's complete financial analyses purportedly summarized in the Recommendation Statement.

49.     The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

50.     New Home is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Recommendation Statement.

51.     Defendants knew that Plaintiff would rely upon the Recommendation Statement in determining whether to tender their shares in favor of the Proposed Transaction.

52.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder, absent injunctive relief from the Court, Plaintiff will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

53.     Plaintiff has no adequate remedy at law.

## COUNT II

### (Against All Defendants for Violation
Of Section 14(e) of the Exchange Act)

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made false statements of material fact or failed to state all material facts that would be necessary to make the statements made, in light of the circumstances, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Proposed Transaction.

56.     Defendants knew that Plaintiff and the Company's shareholders would rely upon their statements made in the Recommendation Statement in determining whether to tender shares in favor of the Proposed Transaction.

57.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

### COUNT III

### (Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)

58.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of New Home within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of New Home, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Recommendation Statement contain the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Recommendation Statement.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

63.     As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for the damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 20, 2021                          Respectfully submitted,

                                               By: */s/ Joshua M. Lifshitz*
                                               Joshua M. Lifshitz
                                               Email: jml@jlclasslaw.com
                                               **LIFSHITZ LAW FIRM, P.C.**
                                               1190 Broadway,
                                               Hewlett, New York 11557
                                               Telephone: (516) 493-9780
                                               Facsimile: (516) 280-7376

                                               *Attorneys for Plaintiff*